UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                          5:09-CR-105 (DNH)

JAMES J. NASCI,

                         Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

JAMES F. GREENWALD, ESQ.
Attorney for Defendant
Office of the Federal Public Defender-Syracuse Office
Districts of Northern New York & Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202

HON. ANDREW T. BAXTER               LISA M. FLETCHER, ESQ.
Office of the United States Attorney       Assistant United States Attorney
Attorneys for the United States of America
100 South Clinton Street
Syracuse, New York 13261-7198

**MEMORANDUM-DECISION and ORDER**

**I.  INTRODUCTION**

      Defendant James J. Nasci ("defendant") is charged with one count of traveling in

interstate commerce and thereafter knowingly failing to register and update his sex offender

registration in violation of 18 U.S.C. § 2250(a).

Defendant moves to dismiss the Indictment.  The United States of America ("Government") opposes and moves for reciprocal discovery.  Both parties' motions were taken on submit without oral argument.

## II. BACKGROUND

### A. Facts

The factual circumstances leading up to defendant's Indictment, in large part, parallel the facts recently presented before the undersigned in United States v. Hall, 577 F. Supp. 2d 610 (N.D.N.Y. 2008), appeal docketed, No. 08-6004 (2d Cir. Jan. 7, 2009) and United States v. Guzman, 582 F. Supp. 2d 305 (N.D.N.Y. 2008), appeal docketed, No. 08-5561 (2d Cir. Nov. 21, 2008).

In 1998, defendant was convicted of a state sex offense in Florida requiring him to register as a sex offender with the state's sex offender registry.  In subsequent years, defendant completed additional sex offender registrations while living in Florida and later moving to New York.  However, annual residence verification forms sent to defendant's last registered address in New York in November of 2007 and again in 2008 were returned to the New York Department of Criminal Justice Services by the United States Postal Service as non-forwardable.  Through an independent investigation, state law enforcement learned that defendant was living in Greenfield, Indiana.  The United States Marshals Service arrested defendant on November 18, 2008, at a residence in Greenfield, Indiana.

Residents at the Indiana address confirmed that defendant was living there in July, September, October, and November of 2008.  Defendant was thereafter charged with failing to register under the Sex Offender Registration and Notification Act ("SORNA") after traveling

in interstate commerce from July of 2008 through November 2008 in violation of 18 U.S.C. §

2250(a).

### B.  The Federal Duty to Register as a Sex Offender

SORNA provides: "A sex offender shall register, and keep the registration current,

in each jurisdiction where the offender resides, where the offender is an employee, and

where the offender is a student." 42 U.S.C. § 16913(a).  A "sex offender" is defined as any

individual who is convicted of a sex offense under either state or federal law. 42 U.S.C. §

16911(1).  Following a change of a sex offender's name, residence, employment, or student

status, SORNA requires that a sex offender notify the state in which he lives of such

change(s). 42 U.S.C. § 16913(c).

### C.  The Federal Criminal Penalty for Failure to Register

While § 16913 creates an obligation under federal law to register with state sex

offender registries and continually update one's registration, 18 U.S.C. § 2250(a) serves as

the enforcement mechanism for a sex offender's duty to register.  Pursuant to § 2250(a), any

sex offender who is required to register under SORNA and either was convicted of a federal

sex offense or was convicted of a state sex offense and traveled in interstate commerce

faces up to ten years in prison for knowingly failing to register or update his registration.

## III.  DISCUSSION

Defendant acknowledges in his memorandum of law that the constitutional issues

raised in support of his motion are identical to the issues presented in Hall and Guzman. See

Def's. Mem. of Law, Dkt. No. 9-2, 1, n.1.  In particular, defendant argues the duty to update

one's sex offender registration pursuant to SORNA constitutes an unconstitutional exercise

of Congress's power under the Commerce Clause.

Hall considered whether Congress, through its Commerce Clause powers, could require sex offenders to update their state sex offender registration regardless of whether they remained in-state or were convicted of only a purely local sex offense. Hall, 577 F. Supp. 2d at 618.  Although the defendant in Hall raised a number of challenges to the federal duty to register established under § 16913, including New York State's failure to implement the statute's registration requirements, the Ex Post Facto Clause, the Due Process Clause, the Tenth Amendment, and the non-delegation doctrine, these arguments were ultimately rejected.  Id. at 614-18.  Nevertheless, Hall held that the federal duty to register with a state's sex offender registry regardless of whether a sex offender remained in-state or was convicted of a purely local sex offense was an unconstitutional exercise of Congress's authority under the Commerce Clause. Id. at 622.  In light of the fact that a defendant's conviction under § 2250(a) requires the Government to prove that he was obligated to register with the state sex offender registry pursuant to § 16913, the constitutional defect of § 16913 extended to § 2250(a). Id. at 623; see also, Ward v. Illinois, 431 U.S. 767, 774, 97 S. Ct. 2085, 2090 (1977) (explaining that an unconstitutional statute cannot serve as a predicate for a defendant's conviction).

Additionally, Hall considered *sua sponte* whether the federal duty to register with states' sex offender registries was a constitutional exercise of Congress's spending power. Hall, 577 F. Supp. 2d at 622.  Hall explained that the notion that § 16913 is constitutional pursuant to Congress's spending power is inconsistent with the argument that sex offenders are required to register under SORNA prior to the states' implementation of the statute's registration requirements. Id.  If SORNA is nothing more than mere encouragement for the states to implement the statute's uniform registration requirements or otherwise lose a

portion of their federal funding, then sex offenders are not yet required to register under SORNA since none of the fifty states have implemented the registration requirements.

Guzman considered the same constitutional issues related to SORNA. In addition to the arguments raised on its behalf in Hall, the Government presented new arguments for the first time in support of its position that Congress could constitutionally require sex offenders to register with states' sex offender registries regardless of whether they remained in-state or were convicted of purely local sex offenses: the Government argued that (1) the intrastate activity of sex offenders has a substantial effect upon interstate commerce; (2) the obligation to register under federal law is a proper exercise of Congress's power under the Necessary and Proper Clause; (3) the duty to register under federal law is proper under Congress's spending powers; and (4) that the defendant should be barred from challenging SORNA's constitutionality because he in fact failed to update his sex offender registration after traveling in interstate commerce. Guzman, 582 F. Supp. 2d at 309. The Government's spending powers argument raised for the first time in Guzman was rejected by reference to the Hall decision and was not afforded further discussion. Id.

The Government's remaining arguments were also rejected. With respect to the contention that sex offenders' intrastate activity substantially affects interstate commerce, Guzman explained that sex offenders' intrastate conduct was neither commercial nor economic in nature. Id. at 310-11 (discussing the distinctions between sex offenders' intrastate activity and the regulated activity considered in Wickard v. Filburn, 317 U.S. 11, 63 S. Ct. 82 (1942) and Gonzalez v. Raich, 545 U.S. 1, 125 S. Ct. 2195 (2005)).[1] Alternatively,

---

[1] In Guzman, the Government conceded that Wickard and Raich regulated intrastate activity that was necessarily economic, whereas sex offenders' intrastate activity is of a non-economic nature. Despite this
(continued...)

the Government cited United States v. Passaro, No. 07-CR-2308-BEN (S.D. Cal. Dec. 17, 2007) for the proposition that a sex offender's intrastate activity has an aggregate effect upon interstate commerce because individuals who elect to participate in interstate commerce may fear for their personal safety.[2]   Guzman likewise rejected Passaro because its rationale parallels the "cost of crime" argument that the Supreme Court first rejected in United States v. Lopez, 514 U.S. 549, 563-64, 115 S. Ct. 1624, 1632 (1995) and again in United States v. Morrison, 529 U.S. 598, 617, 120 S. Ct. 1740, 1754 (2000) ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.").

Notably, the Government does not presently contend that sex offenders' intrastate conduct substantially affects interstate commerce.  Instead, the Government presents three new arguments in support of upholding SORNA: (1) that, for different reasons than argued in Guzman, SORNA is a valid exercise of Congress's powers under the Necessary and Proper Clause; (2) that SORNA does not establish a federal obligation for sex offenders to update their registry outside of federal jurisdiction; and (3) that the federal obligation to register is a

---

[1](...continued)
concession, the Government cited Raich in support of its argument that federally regulated intrastate activity need not be considered "commercial" so long as the activity had a substantial economic effect upon interstate commerce.  Guzman distinguished Wickard and Raich on the grounds that, even if the statutes at issue in those cases did not concern commercial activity because the goods were produced locally and for personal consumption purposes only, the regulated intrastate activity nonetheless focused upon the production of *commodities* as opposed to the sexual abuse of children. Hall, 582 F. Supp. 2d at 310-11.

[2] The Passaro Court held:
> It is rational to conclude that maintaining a comprehensive national registry of sex offenders affects interstate commerce. For individuals engaging in any commerce-related activity, personal safety and safety of their families is a prime concern. Economic development in certain areas may be encouraged or discouraged depending on the safety level. Requiring sex offenders to register within three days of a change in residence is a means reasonably adapted to achieving SORNA's purpose.

Passaro, No. 07-CR-2308-BEN, at 9.

proper exercise of Congress's Commerce Clause power because Congress intended to help

the states remedy a national problem that defied a local solution.  The Government also

reiterates its same argument asserted in Guzman that defendant is barred from challenging

the constitutionality of SORNA because he in fact traveled in interstate commerce.  See

Guzman 582 F. Supp. 2d at 314-15 (rejecting the argument that the defendant was barred

from challenging the constitutionality of the federal duty to register under § 16913).

> In light of the identical issues raised in Hall and Guzman, all arguments previously

raised by both parties with exception to defendant's Commerce Clause challenge will be

rejected for the same reasons stated therein, and accordingly, only the three new arguments

raised by the Government will be discussed further.

### A.  The Necessary and Proper Clause

> Under the Necessary and Proper Clause, Congress may "make all Laws which

shall be necessary and proper" for executing its enumerated powers.  U.S. CONST. art. I, § 8,

cl. 18.  Congress may regulate intrastate activities that do not substantially affect interstate

commerce so long as the regulation is "a necessary part of a more general regulation of

interstate commerce." Raich, 545 U.S. at 37, 125 S. Ct. at 2217 (Scalia, J., concurring).

Whether the Necessary and Proper Clause supports federal regulation of intrastate activity

requires courts to consider whether the means chosen by Congress are "reasonably

adapted" to achieve a legitimate objective pursuant to one of Congress's other enumerated

powers. Id.  Additionally, the Supreme Court explained that the analysis focuses upon

whether the more general "regulatory scheme could be undercut unless the intrastate activity

were regulated." Lopez, 514 U.S. at 561, 115 S. Ct. at 1630-31; see also Raich, 545 U.S. at

38, 125 S. Ct. at 2218 (Scalia, J., concurring).

The Government contends that the regulation of sex offenders' intrastate activity pursuant to § 16913 is a necessary part of a more general regulation of interstate commerce, i.e., the tracking of sex offenders' across state lines.  In general, the Government asserts that Congress may regulate sex offenders' intrastate activities, including when they move to a new home within the same state, change their name, graduate from school, or change jobs, because the regulation of these intrastate activities is needed to ensure the effective tracking of sex offenders who travel between states.

While the Government may presently contend that the regulation of intrastate activity under § 16913 is necessary for the effective monitoring of sex offenders' interstate travel, the fact that § 2250(a) is limited to sex offenders who travel in interstate commerce speaks otherwise.  Any argument that Congress only intended to enforce SORNA's registration requirements "under circumstances supporting federal jurisdiction," see Government's Mem. of Law in Opp'n, Dkt. No. 10, 15, is irrelevant because, under the Government's Necessary and Proper Clause argument, Congress was free to criminalize sex offenders' non-compliance with SORNA's registration requirements even if they remained wholly in-state.  If the regulation of sex offenders' intrastate activities is as necessary to the effective monitoring of sex offenders' interstate travel as the Government contends, Congress would have then found it appropriate to extend the criminal enforcement mechanism to include sex offenders who remained in-state, particularly in light of the Government's position that the intrastate activity is subject to federal regulation.  Congress's decision to limit the criminal penalty statute to sex offenders who travel between states precludes the Government from arguing that § 16913 is constitutional under the Necessary and Proper Clause.  The reality of SORNA is that Congress either determined § 16913 was

not sufficiently necessary to the interstate tracking of sex offenders so as to criminalize all instances of non-compliance, or alternatively, criminal sanctions were limited to sex offenders who travel in interstate commerce in an attempt to bolster the constitutionality of the statutory scheme and sidestep the Supreme Court's jurisprudence established in Lopez.  In either case, § 16913 is not a constitutional exercise of Congress's power under the Necessary and Proper Clause.

### B.  The Federal Obligations Created Pursuant to § 16913

The Government alternatively argues that § 16913 does not create an obligation for sex offenders to register outside of federal jurisdiction.  In support of this position, the Government contends that § 16913 serves a dual purpose.  The Government argues that § 16913 first serves as a template for registration requirements that states must incorporate into their own registration programs or otherwise receive less federal funds. See 42 U.S.C. § 16925(a) (providing for a ten percent reduction in federal funding to any jurisdiction that fails to "substantially implement" SORNA's registration requirements); see also 42 U.S.C. § 16924(a) (affording states until July 27, 2009 to implement the registration requirements). With respect to this first purpose, the Government repeats its spending powers argument in support of why § 16913 is constitutional.  "The second purpose of the registration requirements is to impose an obligation on sex offenders that may be enforced through federal criminal sanctions when a violation occurs under circumstances supporting federal jurisdiction, such as the failure to register following interstate travel or failure to register by a person convicted of a federal offense." Government's Mem. of Law in Opp'n, Dkt. No. 10, 15.

The Government contends that § 16913 could not have been limited to sex offenders who traveled in interstate commerce or who were convicted of federal offenses without inhibiting the first purpose of the statute, namely, to encourage the states through Congress's spending power to adopt the uniform registration requirements. Id. at 16. However, the purported second purpose of § 16913 is not supported by SORNA's statutory language.  Under the section entitled, "Declaration of Purpose," SORNA explains that the statute was enacted "to protect the public from sex offenders" and that Congress enacted the statute to "establish[] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901.  As discussed in Guzman, 582 F. Supp. 2d at 313, SORNA's stated purpose indicates Congress's intention to create uniform, national registration requirements; § 16901 does not demonstrate an intention to track sex offenders only when they cross state lines.

        The Government may not portray § 16913 as an exercise of Congress's spending powers while simultaneously asserting that the statute creates an affirmative obligation under federal law for sex offenders to update their registration with state sex offender registries. Either SORNA represents Congress's attempt to encourage states to adopt the registration requirements under § 16913 or the statute unconstitutionally creates a federal obligation for sex offenders to register regardless of whether they remain in-state or were convicted of purely a local sex offense.[3]  Section 16924(a) expressly provides a deadline for states to

---

[3] Congress delegated to the Attorney General the authority to determine the applicability of § 16913 to sex offenders prior to the states' implementation of the registration requirements. See 42. U.S.C. § 16913(d).  In 2007, the Attorney General promulgated the federal regulation specifying that SORNA applied to sex offenders irrespective of whether a jurisdiction has implemented the statute's registration requirements. See 28 C.F.R. § 72.3 (2007); see also 72 Fed. Reg. 30228 (May 30, 2007).  Although the actual delegation of authority did not violate the non-delegation doctrine, the constitutionality of the statutory
(continued...)

adopt the uniform registration requirements and § 16925(a) imposes a penalty for states'

failure to do so.  Significantly, none of the fifty states have yet to implement SORNA's

registration requirements.  In light of §§ 16901, 16924(a) and 16925(a), the Government's

argument that § 16913 serves a dual purpose is unpersuasive and does nothing to overcome

the fact that Congress may not constitutionally impose a registration requirement onto all sex

offenders regardless of whether they remain wholly in-state.

### C. Efforts to Solve a National Problem that Defies a Local Solution

The Government also argues that SORNA, including the registration requirements

established under § 16913, is a proper exercise of Congress's Commerce Clause power

because the statute addresses a national problem that the states are incapable of solving on

their own.  The Government relies upon United States v. Sage, 92 F.3d 101 (2d Cir. 1996) in

support of its argument that the states' difficulties tracking sex offenders validates the federal

regulation of sex offenders' intrastate activity.  In Sage, the court held that Congress,

pursuant to its Commerce Clause power, could permissibly criminalize a parent's failure to

pay child support for a child residing in another state. Id. at 105-07.

The Government's reliance upon Sage is misguided because the Government

presumes that § 16913 regulates commercial transactions related to economic activity.

Unlike § 16913, the statute at issue in Sage intended to "prevent the frustration of an

obligation to engage in commerce." Id. at 105-06.  The court explained that "[b]ecause it

presupposes an order of a State court imposing an obligation to pay money, the Act

concerns transactions related to economic activity." Id. at 107.

---

[3](...continued)
scheme remains subject to challenge by defendant.

In contrast, § 16913 establishes an obligation to update one's sex offender registration with state sex offender registries, thereby falling outside the category of "transactions related to economic activity."  The Commerce Clause, although broad in its scope, does not grant Congress unlimited authority to enact legislation intended to address *any* national issue, let alone registration requirements for sex offenders.  Rather, regulated activity must fall within the three categories established in Lopez.  See 514 U.S. 549, 558-59, 115 S. Ct. at 1629-30.  The Sage court explained that "[n]one of the concerns in the Lopez opinion is [sic] at stake in this case" because the statute under consideration regulated economic activity.  Although the Sage court explained that  "Congress has often passed legislation to help the States solve problems that defy local solution," each of the court's examples concerned statutes that regulated inherently economic activity. Sage, 92 F. 3d at 105 (citing Perez v. United States, 402 U.S. 146, 150, 91 S. Ct. 1357, 1359 (1971) (evaluating the constitutionality of the Consumer Credit Protection Act); United States v. Sheridan, 329 U.S. 379, 384, 67 S. Ct. 332, 335 (1946) (considering whether the National Stolen Property Act was constitutional); United States v. Bishop, 66 F. 3d 569, 579 (3rd Cir. 1995) (determining the constitutionality of the Anti Car Theft Act)).

The argument with respect to states' difficulty with tracking sex offenders is unpersuasive for the same reasons that the regulation of sex offenders' intrastate activity is not substantially related to interstate commerce.  Sage and its prior cases presupposed that the statutes under consideration regulated commercial, economic activity.  Therefore, §16913 is an unconstitutional exercise of Congress's legislative authority irrespective of the challenges states are presented with when tracking sex offenders.

### D. **Cross-Motion for Discovery**

The Government moves for discovery of evidence the defendant intends to introduce during his case in chief pursuant to Federal Rule of Criminal Procedure 16(b)(1). In light of the decision to grant defendant's motion to dismiss the Indictment, the Government's cross-motion will be denied as moot.

## IV. **CONCLUSION**

As already mentioned, many of the arguments raised by both parties have already been considered in Hall and Guzman. To the extent that the Government asserts new arguments in support of upholding § 16913, none of the arguments persuasively demonstrate that the statute is a proper exercise of Congress's power under the Commerce Clause. Any argument that the regulation of sex offenders' intrastate activity is necessary to effectively monitor sex offenders' travel across state lines is belied by Congress's decision to limit the criminal enforcement statute to sex offenders who fail to register after traveling in interstate commerce. If, as the Government contends, Congress has both the need and the constitutional capability to impose a federal obligation for sex offenders to update their registry regardless of whether they remain in-state or are convicted of a purely local sex offense, it would logically follow that Congress would extend § 2250(a) to cover all sex offenders.

The Government's other arguments are equally unpersuasive. SORNA's stated purpose and incentives for states to implement its registration requirements cut against the Government's position that § 16913 has a dual purpose, and in any event, Congress cannot enact a statute that is intended to merely encourage state action and also establish affirmative obligations under federal law. Last, the Government's argument that § 16913 is

constitutional because it helps address a national problem that defies local solution must be rejected because the Government presumes that § 16913 regulates economic activity. Section 16913 is easily distinguishable from the statute considered in Sage and the cases cited therein.  Therefore, §16913 unconstitutionally establishes a federal obligation for sex offenders to update their registration regardless of whether they remain in-state or were convicted of a purely local sex offense, and as a result, any conviction under § 2250(a) is likewise unconstitutional because a defendant's obligation to register pursuant to § 16913 is a predicate for conviction.

Accordingly, it is

ORDERED that

1. Defendant's motion is GRANTED;

2. The Government's motion is DENIED; and

3. The Indictment is DISMISSED.

IT IS SO ORDERED.

United States District Judge

Dated: June 26, 2009
       Utica, New York.